**TARTER KRINSKY & DROGIN LLP**
*Attorneys for Plaintiff*
Laurent S. Drogin (LSD 4770)
1350 Broadway, 11th Floor
New York, New York 10018
(212) 216-8000

**D. CLAY TAYLOR, P.A.**
Clay Taylor (pro hac vice to be applied for)
1300 Nicollet Mall
5002 Merchandise Mart
Minneapolis, MN 55403
(612) 904-7376



UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Born Free, Inc., <br> a Georgia corporation, <br><br> Plaintiff, <br><br> vs. <br><br> Success Apparel, LLC, <br> d/b/a Success Apparel Group, <br> a New York limited liability company, <br><br> Defendant. | Court No. <br> --ECF Case-- <br><br><br> **COMPLAINT** <br> *(Jury Trial Demanded)* |

*COMES NOW,* the Plaintiff, Born Free, Inc. ("Born Free"), by and through its attorneys, Tarter Krinsky & Drogin, LLP and D. Clay Taylor, P.A., for its complaint against Defendant, Success Apparel, LLC d/b/a Success Apparel Group ("SAG"), states and alleges as follows:

### THE PARTIES & JURISDICTION.

1. Plaintiff, Born Free, Inc., is a corporation formed under the laws of the State of Georgia and maintains its principal place of business in Atlanta, Georgia. The

00213291

owner and president of Born Free is Chris Hunter. At all times relevant to this complaint Born Free has operated as a commissioned, independent sales representative for manufacturers and importers in the apparel industry.

2. Defendant, Success Apparel, LLC, is a New York limited liability company, maintaining its principal place of business in New York, New York. Success Apparel, LLC also conducts business under the name "Success Apparel Group." Upon information and belief, all of the members of Success Apparel, LLC are citizens of the State of New York and none are citizens of the State of Georgia.

## JURISDICTION & VENUE.

3. This Court has personal jurisdiction over the Defendant because at all times it has been a citizen of the State of New York with its principal place of business located in this district.

4. This Court has subject matter jurisdiction over this matter, pursuant to 28 U.S.C. §1332, because the parties are of diverse citizenship and the amount in controversy between them exceeds $75,000.00.

5. Venue is appropriate in the Southern District of New York, pursuant to 28 U.S.C. §1441(a), because Defendant's principal place of business is in this district and because the parties' written contract specifies that actions alleging its breach must be venued in this district.

6. Plaintiff demands a jury trial on all applicable claims, pursuant to Fed.R.Civ.P. 38.

## FACTUAL ALLEGATIONS.

7. For eighteen years Born Free has operated as a commissioned, independent sales representative focused on selling fashion apparel products to major retail store accounts in the Southeastern United States.

8. Since approximately August 2004, SAG has imported and marketed a line of children's t-shirts, fleece, headwear and other apparel products and accessories bearing the JOHN DEERE® trademarks and logos, which it uses under an exclusive license from John Deere Company.

9. Since its inception, SAG has sold these JOHN DEERE branded apparel products primarily through a network of commissioned, independent sales representatives who are assigned exclusive territories.

10. On or about August 3, 2004, Born Free and SAG entered into a written sales representative agreement which, *inter alia*, granted Born Free the right to sell SAG's products to retail store accounts in a territory of Southeastern states which included the State of Georgia. Nowhere in the parties' contract did SAG reserve the right or discretion to alter Born Free's territory or designate any customer in that territory as a "house account."

11. Furthermore, the contract provided that SAG would pay Born Free a variable commission on the net-shipped value of goods sold to retail store accounts in its territory. Under the terms of the parties' contract, the amount of the commission rate was determined as follows: (a) 8% on full line price goods; (b) 6% on sales below full line price; and (c) 4% on all closeout goods. Again, nowhere in the parties' contract did SAG reserve the right or discretion to alter or modify these commission rates.

12. The parties' written contract also provides that any disputes between them would be venued in state or federal court located in New York, New York.

13. Over the years, Born Free has been enormously successful in marketing and promoting SAG's JOHN DEERE products with retail stores in its territory. Born Free has been particularly successful in placing SAG's products with four of the largest retail store accounts in its territory: Goody's Family Clothing Stores ("Goody's"); Tractor Supply Company ("Tractor Supply"), Cracker Barrel Stores ("Cracker Barrel") and Stage Stores, Inc. ("Stage Stores," operating as Peebles, Bealls, and Palais Royal). By 2008, Born Free's sales of SAG's products to these retail store accounts exceeded $3 Million.

14. Despite Born Free's success in creating a market for its products, in 2007 SAG began systematically breaching the parties' contract.

15. In approximately December 2006, SAG breached the parties' contract by unilaterally reducing Born Free's commission rate on sales to Goody's to a flat 3%.

16. Upon information and belief, the balance of commissions owed by SAG to Born Free on sales to the Goody's account (at the prevailing contract rate) is approximately $70,000.00.

17. Then, in September 2008, SAG breached the parties' contract by unilaterally reducing Born Free's commission rate on sales to both Tractor Supply and Cracker Barrel to a flat 3%.

18. SAG further breached the parties' contract by applying this reduced commission rate retroactively to business already procured by Born Free, from Tractor Supply and Cracker Barrel, for the Spring 2009 selling seasons. The purchase orders for

these retail seasons were obtained by Born Free with the understanding and expectation that commissions would be paid at the applicable contract rate.

19. Upon information and belief, the balance of commissions owed by SAG to Born Free on sales to the Tractor Supply and Cracker Barrel accounts (at the prevailing contract rate) is approximately $70,000.00.

20. Then, in October 2008, SAG further breached the parties' contract by unilaterally designating Tractor Supply as a "house account" and thereby removing the largest customer from Born Free's territory. As a result, SAG has not paid Born Free any commissions on sales made to the Tractor Supply account since shipments on the Spring 2009 selling season.

21. Upon information and belief, the commissions owed by SAG to Born Free on sales to the Tractor Supply account, placed since the Spring 2009 selling season, will exceed an additional $50,000.00.

22. On or about August 19, 2009 Born Free confronted SAG with these multiple breaches of the parties' contract and demanded payment of all commissions. Unable to resolve the situation, Born Free resigned as SAG's independent sales representative. Since the end of the parties' business relationship, SAG has paid none of the commissions detailed in the preceding complaint paragraphs.

## COUNT I.
## BREACH OF CONTRACT.

23. Born Free reasserts each and every factual allegation contained in complaint paragraphs 1 through 22 as if fully restated herein.

24. At all times relevant to this matter there was a written sales representative agreement between the parties which called for the payment of commissions to Born Free at the following rates: (a) 8% on full line price goods; (b) 6% on sales below full line price; and (c) 4% on all closeout goods.

25. Nowhere in the parties' contract was SAG granted the discretion to revise the commission rate applicable to sales made by Born Free.

26. The parties' contract further specified that Born Free's exclusive sales territory was comprised of all retail accounts in the Southeastern United States.

27. Nowhere in the parties' contract was SAG granted the discretion to revise Born Free's territory or designate any retail store account as a "house account."

28. The parties' contract further specifies that no provision may be waived or modified unless agreed in writing, signed by the parties. There is no such signed, written waiver, modification or addendum to the parties' contract.

29. By its conduct, as specified in complaint paragraphs 15, 17, 18 and 20, SAG has committed multiple breaches of the parties' written contract.

30. As a direct and proximate result of SAG's multiple breaches of the parties' contract, Born Free has suffered—and will continue to suffer—compensatory and consequential damages, in an amount to be proven at trial, but which will exceed $75,000.00.

## COUNT II.
## VIOLATION OF GEORGIA CODE §10-1-700, *et seq.*

31. Born Free reasserts each and every factual allegation contained in complaint paragraphs 1 through 30 as if fully restated herein.

32. At all times relevant to this action, SAG has been a "principal" as that term is defined by Georgia Code §10-1-700(2).

33. At all times relevant to this action, Born Free has been a "sales representative," as that term is defined by Georgia Code §10-1-700(3).

34. At all times relevant to this action, there has been a written sales representative agreement between the parties specifying Born Free's exclusive sales territory and the rate at which commissions were to be paid on its sales of SAG products.

35. At all times relevant to this action, Born Free has been a citizen of the State of Georgia and its sales territory for SAG included that state.

36. Under the express terms of the parties' contract, SAG owes Born Free commissions on sales of SAG products to retail store accounts in Born Free's exclusive territory, and these unpaid commissions exceed $75,000.00.

37. Since the termination of the parties' contract, SAG has continued its refusal to pay Born Free commissions due under the terms of that contract.

38. By its conduct, SAG has violated the prompt commission payment provisions of Georgia Code §10-1-702(a).

39. Georgia Code §10-1-703 specifically provides that no provisions of Georgia Code §10-1-700 through §10-1-704 may be waived, either by express contract term or by operation of a contractual choice of law provision designating the law of any other state.

40. As a direct and proximate result of SAG's violation of Georgia law, Born Free has suffered—and will continue to suffer—compensatory and consequential

damages, in an amount to be proven at trial, but which will exceed $75,000.00, per Georgia Code §10-1-702(b)(1).

41.  Furthermore, Born Free is entitled to and should properly be awarded exemplary damages from SAG, for its violation of Georgia law, in an amount equal to twice the commissions sought by this action, per Georgia Code §10-1-702(b)(2).

## COUNT III.
## VIOLATION OF NEW YORK LABOR LAW §191-a, *et seq.*

42.  Born Free reasserts each and every factual allegation contained in complaint paragraphs 1 through 41 as if fully restated herein.

43.  At all times relevant to this matter, Born Free has been a "sales representative" as that term is defined by New York Labor Law §191-a (d).

44.  At all times relevant to this complaint, SAG has been a "principal" as that term is defined by New York Labor Law §191-a(c).

45.  Alternatively, by its failure to pay Born Free earned commissions, consistent with the terms of the parties' contract, SAG has violated the prompt payment requirements of New York Labor Law §§191-b(3) and 191-c.

46.  Alternatively, as a direct and proximate result of SAG's violation of New York law, Born Free has suffered and will continue to suffer compensatory and consequential damages, in an amount to be proven at trial, but which will exceed $75,000.00, per New York Labor Law 191-b.

47.  Alternatively, Born Free is entitled to and should properly be awarded the statutory penalty from SAG, for its violation of New York law, in an amount equal to the commissions sought by this action, per New York Labor Law §191-c(3).

*WHEREFORE*, Plaintiff, Born Free, Inc., respectfully prays the Court enter an order for judgment in its favor and against Defendant for the following relief:

1. Awarding Plaintiff compensatory and consequential damages on all counts of its Complaint, in an amount to be proven at trial, but which will exceed $75,000.00.

2. Awarding Plaintiff, on Count II of its Complaint, exemplary damages in an amount to be proven at trial, but equal to twice the amount of unpaid commissions due to it, as mandated by Georgia Code §10-1-702(b)(2).

3. Alternatively, awarding Plaintiff, on Count III of its complaint, the statutory penalty mandated by New York Labor Law 191-c(3), in an amount equal to the unpaid commissions due.

4. Awarding Plaintiff its costs, disbursements, statutory interest and reasonable attorneys' fees related to the prosecution of this action, per Georgia Code §10-1-702(b)(3), New York Labor Law §191-c(3), or as otherwise allowed by law.

5. Such other further, additional relief as the Court deems just and reasonable.

Dated: New York, New York
       August 31, 2009

                                      Respectfully submitted,
                                      **TARTER KRINSKY & DROGIN LLP**
                                      *Attorneys for Plaintiff*

                                      By: _____
                                        Laurent S. Drogin (LD 4770)
                                        1350 Broadway
                                        New York, NY 10018
                                        Phone (212) 216-8000
                                        Fax (212) 216-8001
                                        Email ldrogin@tarterkrinsky.com

In Association With:

**D. CLAY TAYLOR, P.A.**
D. Clay Taylor, Esq.
Pro Hac Vice To Be Applied For
1300 Nicollet Mall, Suite 5002
Minneapolis, MN 55403
Phone (612) 904-7376
Fax (612) 904-7376
Email DCTPA@msn.com